IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA
Plaintiff,

No. 2:18CR20512

V

Honorable MARK A. GOLDSMITH

JAMAL CAFFEY-BOSTIC
Defendant.
_____________________________________/

SANFORD A. SCHULMAN
Attorney for Defendant
JAMAL CAFFEY-BOSTIC
500 Griswold Street, Ste. 2340
Detroit, MI 48226
(313) 963-4740
Fax: (248) 671-0353
Email: saschulman@comcast.net

STEFANIE LAMBERT JUNTTILA
Attorney for Defendant
JAMAL CAFFEY-BOSTIC
500 Griswold Street, Ste. 2340
Detroit, MI 48226
(313) 963-4740
Fax: (248) 671-0353
Email: attorneystefanielambert@gmail.com

ANDREA HUTTING
U.S. Attorney's Office
211 W. Fort Street
Suite 2001
Detroit, MI 48226
(313) 226-3265
Email: andrea.hutting@usdoj.gov

**DEFENDANT, JAMAL CAFFEY-BOSTIC**
**MOTION FOR RESENTENCING AND REQUEST FOR EARLY RELEASE**

NOW COMES the Defendant, JAMAL CAFFEY-BOSTIC, by and through his attorneys, SANFORD A. SCHULMAN, and STEFANIE L. LAMBERT, and states in support of Motion to Resentence Defendant and Request for Early Release as follows:

1. On September 19, 2019, the defendant, JAMAL CAFFEY-BOSTIC, pled guilty to conspiracy to possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846.

2. On January 15, 2020, this Honorable Court sentenced JAMAL CAFFEY-BOSTIC to a total term of thirty-six (36) months with five (5) years supervised release following release from imprisonment.

3. Mr. Caffey-Bostic is serving his sentence at FCI Beaumont Low in Beaumont, Texas.

4. Mr. Caffey-Bostic suffers from chronic asthma. (See Exhibit 1).

5. Mr. Caffey-Bostic's medical condition makes him a high risk for Coronavirus (COVID-19) because COVID-19 is particularly harsh on patients with respiratory conditions.

6. The defendant to respectfully request that his sentence be modified pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) in light of the COVID-19 pandemic.

7. As a result of both his medical status, should Mr. Caffey-Bostic become infected, he faces a substantial risk of suffering a severe form of the disease or even death.

8. The defense maintains that the risk COVID-19 poses to Mr. Caffey-Bostic's health amounts to an "extraordinary and compelling" circumstance that warrants transferring Mr. Caffey-Bostic to supervised release with a special condition of home confinement for the duration of his sentence. Mr. Caffey-Bostic will enroll in substance abuse treatment while in home confinement. Many treatment programs are conducting treatment sessions by Zoom.

9. As of May 16, 2020, The Bureau of Prisons' website tracking COVID-19 confirms 2,280 federal inmates, and 283 BOP staff who have positive test results for COVID-19. *BOP: COVID-19 Update*, May 16, 2020, https://www.bop.gov/coronavirus/.

10. As you are aware, COVID-19 is highly contagious and is spreading at a rapid rate. In New York state, more than 66,000 individuals have tested positive for the virus, resulting in at least 1,200 deaths. Orange County -- where FCI Otisville is located -- has registered over 1,400 cases.

According to the World Health Organization, the populations most at risk of suffering a severe form of the disease include "[o]lder people, and those with underlying medical problems like cardiovascular disease [and] diabetes." (People

Who Are at Higher Risk for Severe Illness, Centers for Disease Control and Prevention, Mar. 22, 2020, https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/people-at-higher-risk.html). The CDC similarly has explained that individuals over the age of 65 and people of any age who have serious underlying medical conditions, including heart conditions, diabetes, and obesity are at higher risk for severe illness from COVID19. Respiratory conditions like Mr. Caffey-Bostic's asthma diagnosis is considered an underlying medical problem which places him in the vulnerable population.

According to the CDC, asthma may put people at higher risk for severe illness from COVID-19. The CDC suggests a number of steps should be taken for those with asthma including have another person who doesn't have asthma clean and disinfect the home. The CDC further cautions that people with asthma are at an increased risk because COVID-19 can affect your respiratory tract (nose, throat, lungs), cause an asthma attack, and possibly lead to pneumonia and serious illness. *People Who Are at Higher Riskr Severe Illness|Coronavirus|COVID-19|CDC*, May 14, 2020, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.

11. Doctors are warning the public that young people in their 30's and 40's are testing positive for COVID-19, and dying of strokes. The medical community is perplexed by this data since most of these young people showed no

signs or symptoms of COVID-19 prior to stoke. *Young and middle-aged people, barely sick with covid-19, are dying of strokes,* The Washington Post, (April 25, 2020), https://www.washingtonpost.com/health/2020/04/24/strokes-coronavirus-young-patients/. Currently Mr. Caffey-Bostic has no way to take his temperature, nor has he been tested for COVID-19.

12. As numerous courts have recognized, "[t]he risk of contracting COVID-19 in tightly confined spaces, especially jails, is now exceedingly obvious." Basank v. Decker, 2020 WL 1481503, at 5 (S.D.N.Y. Mar. 26, 2020).

One public health expert has explained: "If you wanted to set up a situation that would promote rapid transmission of a respiratory virus, you would say prison: it's close quarters, unsanitary, individuals in frequent contact." In such situations, it is "nearly impossible to provide infection control." (Daniel A. Gross, "'It Spreads Like Wildfire': The Coronavirus Comes to New York's Prisons," The New Yorker, Mar. 24, 2020.

Other experts describe the possibility of "accelerated transmission and poor health outcomes of patients with COVID-19 in prisons and jails" as "extraordinarily high" due not only to the close quarters in which the inmates reside, but also the quality and quantity of available medical care and the fact that hundreds of individuals -- from staff to new arrestees -- enter and leave detention facilities daily. (Brie Williams, COVID-19 in Correctional Settings, Mar. 22, 2019,

https://www.scribd.com/document/452807558/NY-Press-Conference-Brie-Williams-Remarks).

These dangers are not theoretical. During the COVID-19 outbreak in China, prisons became hotbeds of infection despite stringent control measures, and press reports indicate that the same is now occurring at FCI Oakdale in Louisiana. (Zi Yang, "Cracks in the System: COVID-19 in Chinese Prisons," The Diplomat, Mar. 9, 2020, https://thediplomat.com/2020/03/cracks-in-the-system-covid-19-in-chinese-prisons/; Kimberly Kindy, "An Explosion of Coronavirus Cases Cripples a Federal Prison in Louisiana," Washington Post, Mar. 29, 2020, https://www.washingtonpost.com/national/an-explosion-of-coronavirus-cases-cripples-a-federalprison-in-louisiana/2020/03/29/75a465c0-71d5-11ea-85cb-8670579b863d_story.html.)

The CDC has recommended that high-risk individuals avoid crowds, keep space between themselves and others, and stay at home to avoid exposure to the virus. (Get Ready for COVID-19, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/get-ready.html.)

Despite BOP's best efforts, it is impossible for Mr. Caffey-Bostic to practice such "social distancing" to protect himself. In FCI Beaumont Low facility inmates eat elbow-to-elbow at the same time, share one large bathroom with a handful of stalls and a handful of showers, and sleep together in bunks beds only a

few feet apart that are divided principally between two dormitories (as opposed to individual cells). There is no place to self-isolate. In short, measures being taken by BOP cannot help but be insufficient, and certainly he is unable to have someone clean his living environment as the CDC suggests.

13. Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), this Court may "reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that substantial and compelling reasons warrant such a reduction."

14. 18 U.S.C. § 3582(c)(1)(A)(i) requires that an inmate exhaust his administrative remedies or wait for 30 days to lapse following his submission of a request for relief to the warden of his facility before seeking judicial relief.

Under these exigent circumstances, however, requiring the 30-day period to pass before Mr. Caffey-Bostic could seek relief from the court would be futile and only further endanger Mr. Caffey-Bostic's health.

15. . We respectfully submit that Mr. Caffey-Bostic's pre-existing health conditions in combination with the COVID-19 pandemic provide extraordinary and compelling reasons to modify his sentence to permit his immediate release to

home confinement. See Basank, 2020 WL 1481503 at *5 (The spread of COVID-19 "is measured in a matter of a single day -- not weeks, months, or years.").

16. Such action by this Court would not be unprecedented. As the number of COVID-19 cases has grown, courts have increasingly taken action to protect the health of at-risk inmates and detainees. See United States v. Campagna, 2020 WL 1489828 (S.D.N.Y. Mar. 27, 2020) (modifying defendant's sentence to replace his outstanding term of imprisonment with an equal period of home incarceration); United States v. Perez, No. 19 Cr. 297 (PAE), Amended Order, Dkt. No. 62 (S.D.N.Y. Mar. 19, 2020) (temporarily releasing pre-trial defendant from custody during the public health crisis); Coronel v. Decker, 2020 WL 1487274 (S.D.N.Y. Mar. 27, 2020) (ordering plaintiffs' immediate release from ICE custody); Basank v. Decker, 2020 WL 1481503, at *7 (same).

17. Mr. Caffey-Bostic urges this Court take immediate action to protect his health and safety. Recently Courts have ruled that excusing strict exhaustion under § 3582(c)(1)(A) during the COVID-19 pandemic is consistent with the congressional intent underlying the exhaustion requirement. *See United States v. Haney*, ---F. Supp.3d---, 2020 WL 1821988, at *3-4 (S.D.N.Y. Apr. 13, 2020). The Court explained in detail how "Congressional intent not only permits judicial waiver of the 30-day exhaustion period, but also, in the current extreme circumstances, actually favors such waiver, allowing courts to deal with the

[COVID-19] emergency before it is too late. Numerous district courts have reached the same conclusion when reviewing compassionate release claims from prisoners who are at risk of severe consequences from contracting COVID-19. *See United States v. Atwi*, No. 18-20607, 2020WL 1910152, at *3 (E.D. Mich. Apr. 20, 2020); *United States v. Pinkerton*, No. 15-30045-3, 2020 WL 2083968, at *3-5 (C.D.Ill.Apr. 30, 2020); *United States v. Bess*, No. 16-156, 2020 WL 1940809, at *7 (W.D.N.Y. Apr.22, 2020; *United States v. Sanchez*, No. 18-00140, 2020 WL 1933815, at *4-5 (D. Conn. Apr. 22, 2020); *United States v. Guzman Soto*, ---F. Supp.3d---, 2020 WL 1905323, at *4-5 (D. Mass.Apr.17, 2020).

18. Under the *Haney* approach, waiving strict adherence to the exhaustion would subject the prisoner to risk of "undue prejudice." Id. Here, requiring strict exhaustion would subject Mr. Caffey-Bostic to undue prejudice.

19. Mr. Caffey-Bostic makes this application knowing that the crimes he committed were serious. He understands that a substantial term of incarceration was appropriate. At the time the Court sentenced Mr. Caffey-Bostic, however, incarceration posed little risk to his health. In light of this unprecedented change in circumstances, we respectfully request that the Court exercise its power to modify Mr. Caffey-Bostic's sentence and direct that he be released to home confinement to serve the remainder of his sentence.

WHEREFORE, the Defendant JAMAL CAFFEY-BOSTIC, by and through his attorneys, SANFORD A. SCHULMAN, and STEFANIE L. LAMBERT, and respectfully requests this Honorable Court enter an order resentencing JAMAL CAFFEY-BOSTIC and early release from federal prison for the reason so stated herein.

Respectfully submitted,

/s/ Stefanie Lambert Junttila

Stefanie Lambert Junttila
Attorney for Defendant
JAMAL CAFFEY-BOSTIC
500 Griswold St Ste 2340
Detroit, MI 48226-4484
attorneystefanielambert@gmail.com
Phone: (313) 963-4740

Date: May 28, 2020

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA
Plaintiff, No. 2:18CR20512

V Honorable MARK A. GOLDSMITH

JAMAL CAFFEY-BOSTIC
Defendant.
_______________________________________/

SANFORD A. SCHULMAN
Attorney for Defendant
JAMAL CAFFEY-BOSTIC
500 Griswold Street, Ste. 2340
Detroit, MI 48226
(313) 963-4740
Fax: (248) 671-0353
Email: saschulman@comcast.net

STEFANIE LAMBERT JUNTTILA
Attorney for Defendant
JAMAL CAFFEY-BOSTIC
500 Griswold Street, Ste. 2340
Detroit, MI 48226
(313) 963-4740
Fax: (248) 671-0353
Email: attorneystefanielambert@gmail.com

ANDREA HUTTING
U.S. Attorney's Office
211 W. Fort Street
Suite 2001
Detroit, MI 48226
(313) 226-3265
Email: andrea.hutting@usdoj.gov

**BRIEF IN SUPPORT OF DEFENDANT, JAMAL CAFFEY-BOSTIC'S MOTION FOR RESENTENCING AND REQUEST FOR EARLY RELEASE**

NOW COMES the Defendant JAMAL CAFFEY-BOSTIC, by and through his attorneys, SANFORD A. SCHULMAN, and STEFANIE L. LAMBERT, and states in support of his Brief in Support of his Motion to Resentence Defendant and Request for Early Release as follows:

**STATEMENT OF ISSUES PRESENTED**

**I. Should this Honorable Court resentence Jamal Caffey-Bostic and release him early from his prison sentence because of COVID-19 and his underlying health condition?**

**Defendant answers. "Yes."**
**Plaintiff answers: "No.**

**Statement of Facts**

On September 19, 2019, Mr. Caffey-Bostic pled guilty to conspiracy to possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846. On January 15, 2020, this Honorable Court sentenced JAMAL CAFFEY-BOSTIC to a total term of thirty-six (36) months with five (5) years supervised release following release from imprisonment.

Defendant's current conditions of confinement are putting his health at risk. Defendant seeks immediate release from confinement as a result of there being no conditions of confinement sufficient to prevent irreparable injury. Defendant is

currently serving out his (36) month sentence at FCI Beaumont Low. Defendant has a release date of September 13, 2022.

Mr. Caffey-Bostic suffers from asthma and has a history of requiring an inhaler.

Mr. Caffey-Bostic is currently at the FCI Beaumont Low, a low-security facility that currently houses over 1,978 inmates.

**Argument**

Under the First Step Act, Mr. Caffey-Bostic is eligible for reduced sentence and this Court can act *sua sponte* to adjust downwards Mr. Caffey-Bostic's imposed sentence so that he is eligible for supervised release.

In addition, the public health recommendation is to release high-risk people from detention, given the heightened risks to their health and safety (ECF No. 6-1, PageID.87 (Declaration of Infections Disease Epidemiologist Joseph Amon)). The only way to prevent serious illness including death is to release all people with low risk factors.

Mr. Robinson is housed at FCI Beaumont Low, in Beaumont, Texas. As the number of inmates testing positive for COVID-19 increased throughout the jails, and prisons the Governor of Texas has issued numerous executive orders in Texas stating, "the novel coronavirus (COVID-19) poses an imminent threat of disaster for all counties in the State of Texas." Executive Order GA 14, *Relating to*

*statewide continuity of essential services and activities during the COVID-19 disaster*, March 31, 2020.

Additionally, as of May 28, 2020, there are 60,722 cases and 1,617 deaths due to COVID-19 in Texas. *Texas Coronavirus Map and Case Count*, May 28, 2020, https://www.nytimes.com/interactive/2020/us/texas-coronavirus-cases.html?smid=em-share.

The COVID-19 virus has directly impacted federal inmates at BOP institutions. As of May 27, 2020, 1,747 inmates were positive for COVID-19, and 3,232 inmates had recovered from COVID-19. The BOP reports 64 inmate deaths. *COVID-19 Cases*, May 28, 2020, bop.gov.

These statistics demonstrate COVID-19 is quickly spreading in the institutions. The number of COVID-19 cases are going to continue to climb in prisons with lack of social distancing, and recommended precautions.

A well-known medical professional, Dr. Greifingert, spoke on a similar issue but relating to ICE facilities. Dr. Greifingert had stated that the only way to "prevent serious illness including death" in ICE facilities is to "release all people with risk factors." (ECF No. 20-3, PageID.374 (Declaration of Dr. Robert B. Greifingert).) Same can be said about FCI Beaumont Low.

On March 23, 2020, the Centers for Disease Control and Prevention (CDC) acknowledged that correctional and detention facilities "present unique challenges

for control of COVID-19 transmission among incarcerated/detained persons, staff, and visitors." *Interim Guidance on Management of Coronavirus Disease 2019* (COVID-19) in *Correctional and Detention Facilities*, Centers for Disease Control (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correctiondetention/guidance-correctional-detention.html. [Hereinafter "CDC Guidance 3/23/2020"].

Specifically, the CDC has noted that many detention conditions create a heightened risk of danger to its inmates. Risks include low capacity for patient volume, insufficient quarantine space, insufficient on-site medical staff, highly congregational environments, inability of most patients to leave the facility, and limited ability of incarcerated/detained persons to exercise effective disease prevention measures (e.g., social distancing and frequent handwashing). Id.

The only adequate relief for Mr. Caffey-Bostic is his release from confinement at FCI Beaumont Low. Social distancing, hygiene measures and proper diet are Mr. Caffey-Bostic's only defense against COVID-19. These protective measures are exceedingly difficult at FCI Beaumont Low, if not impossible. Mr. Caffey-Bostic shares toilets, sinks, phones, and showers, eats in communal spaces, and is in close contact with other inmates and officers.

Social distancing of at least six feet would be impossible at FCI Beaumont Low. Multiple doctors and public health experts across the country and world have stated that the only viable public health strategy available is risk mitigation.

In addition, matters are only getting worse in facilities like FCI Beaumont Low. On April 1, 2020, the Rikers Island jail complex's chief physician acknowledged that "infections are soaring" despite the facility's "following Centers for Disease Control and Prevention guidelines and having moved mountains to protect our patients." Miranda Bryant, *Coronavirus Spread at Rikers is a 'Public Health Disaster', Says Jail's Top Doctor*, The Guardian (Apr. 1, 2020), https://www.theguardian.com/us-news/2020/apr/01/rikers-island-jailcoronavirus-public-health-disaster.

No matter what steps are taking at FCI Milan, Mr. Caffey-Bostic is constantly at risk of his symptoms getting worse due to his underlying health conditions. The ongoing COVID-19 pandemic creates a high risk that absent an early release by this Court, Mr. Caffey-Bostic will suffer irreparable harm in the form of loss of health or life as a result of contracting the COVID-19 virus, if he has not already. FCI Beaumont Low is unable to provide proper treatment for those who are experiencing symptoms of COVID-19 and are not being tested, and their condition could worsen and result in death.

Currently, there is very little guidance regarding COVID-19 and how it can be treated. As of April 13, 2020, health experts aren't sure why some healthy, young people are dying from the virus. *Why does COVID-19 kill some young, healthy people-and spare others*, Advisory Board (April 13, 2020), http://www.advisory.com/daily-briefing/2020/04/13/covid-young-people.

Additionally, doctors are warning the public that young people in their 30's and 40's are testing positive for COIVD-19, and dying of strokes. The medical community is perplexed by this data since most of these young people showed no signs or symptoms of COVID-19 prior to stoke. *Young and middle-aged people, barely sick with covid-19, are dying of strokes,* The Washington Post, (April 25, 2020), https://www.washingtonpost.com/health/2020/04/24/strokes-coronavirus-young-patients/.

The United States Attorney General issued a directive to consider early release for detainees who do not pose a public safety risk, as minimizing crowded populations is the only known way to mitigate spread of this pandemic. *Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic*, Att'y Gen. (Mar. 26, 2020); Executive Order, No. 2020-29 (COVID-19) (Mar. 26, 2020).

## Conclusion

Defendant Caffey-Bostic has a better chance to stay healthy or seek immediate treatment at a hospital if needed if he were to be released from FCI Beaumont Low. Defendant's continued confinement at FCI Beaumont Low exposes him to greater symptoms of COVID-19 and possible death due to his underlying condition.

WHEREFORE, the Defendant JAMAL CAFFEY-BOSTIC, by and through his attorneys, SANFORD A. SCHULMAN and STEFANIE LAMBERT, respectfully requests this Honorable Court enter an order resentencing JAMAL CAFFEY-BOSTIC and early release from federal prison for the reason so stated herein.

Respectfully submitted,

/s/ Stefanie Lambert Junttila
Stefanie Lambert Junttila
Attorney for Defendant
JAMAL CAFFEY BOSTIC
500 Griswold St Ste 2340
Detroit, MI 48226-4484
Attorneystefanielambert@gmail.com
Phone: (313) 963-4740

Date: May 28, 2020

Certificate of Service

I, Stefanie Lambert Junttila, attorney at law, certify that on May 28, 2020, I caused a copy of this pleading to be served upon the Clerk of the Court and Government via E-file.

/s/ Stefanie Lambert Junttila
STEFANIE LAMBERT JUNTTILA